Russell G. Wheeler (Bar Roll No. 517881)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES SOPER,<br><br>                              Plaintiff,<br><br>     v.<br><br>NEUROLOGICA CORP and STEPHEN HAMLET,<br>in his individual capacity,<br><br>                              Defendants. | COMPLAINT<br><br>Index No. 5:21-cv-1128 (FJS/TWD) |

Plaintiff James Soper, by and through his counsel Charny & Wheeler P.C., bring this

Complaint and in support thereof state as follows.

<u>NATURE OF THE ACTION</u>

1.      This is an action for damages and other relief under the New York State Human

Rights Law, N.Y. Exec. L. § 290 <u>et seq.</u>, enforcing the provisions of Section 752 of the New

York State Corrections Law, based upon defendant Neurologic Corp's termination of Plaintiffs'

employment and other discriminatory actions, based upon his previous conviction of a criminal

offense and/or by reason of a finding that Plaintiff lacked good moral character, as aided and

abetted by defendant Stephen Hamlet, in violation of the anti-discrimination provisions of the

New York Corrections Law, N.Y. Corr. L. §§ 750 <u>et seq.</u>

<u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) in

1

that Plaintiff is and at all relevant times was a resident of the State of New York, defendant Neurologica Corp is and at all relevant times was a resident of the Commonwealth of Massachusetts, defendant Stephen Hamlet is and at all relevant times was a resident of the State of New Hampshire, and the matter in controversy herein exceeds the sum or value of seventy-five thousand dollars ($75,000) exclusive of interests and costs.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as Defendants' unlawful employment practices were committed against Plaintiff in Onondaga County, within the Northern District of New York.

PARTIES

4.      Plaintiff James Soper (herein Plaintiff) is and at all relevant times was an adult male residing in Syracuse, New York.  As described herein, Plaintiff was previously employed by defendant Neurologica Corp as a Customer Loyalty Engineer.

5.      Defendant Neurologica Corp (herein Corporate Defendant) is and at all relevant times was a Massachusetts Domestic Profit Corporation, organized and existing under the laws of the Commonwealth of Massachusetts and engaging in the development, manufacturing, and marketing of diagnostic medical imaging technologies with a principal place of business located in Danvers, Massachusetts.

6.      Defendant Stephen Hamlet is and all relevant times was an adult male residing, upon information and belief, in Greenland, New Hampshire and employed by Corporate Defendant as Director of Human Resources.

FACTS

PLAINTIFF'S CONVICTION

7.      On or about August 9, 2018, Plaintiff was convicted in the New York Supreme Court for Cayuga County of the offense of Attempted Criminal Act in the Second Degree, in violation of New York Penal Law § 110-130.45, a Class E Felony.

8.      Plaintiff has no other criminal convictions.

9.      In or about June 2019, Plaintiff began employment with Corporate Defendant as a Customer Loyalty Engineer.

10.     As a Customer Loyalty Engineer, Plaintiff visited health care facilities in and around the State of New York on behalf of Corporate Defendant, demonstrating the use of its diagnostic medical imaging technologies.

11.     At or about the time of hire, Plaintiff disclosed to Corporate Defendant his prior criminal conviction.

12.     At or about the time of hire, Plaintiff submitted to a pre-employment background check, including a criminal history search, conducted on behalf of Corporate Defendant.

13.     Upon information and belief, the results of Plaintiff's pre-employment background check included his 2018 criminal conviction for Attempted Criminal Act in the Second Degree.

14.     Notwithstanding such conviction, Corporate Defendant hired Plaintiff and employed him in the role of Customer Loyalty Engineer.

15.     In his role as Customer Loyalty Engineer, Plaintiff performed his job duties without issue or criticism by or on behalf of Corporate Defendant.

16.     Following his hire by Corporate Defendant, Plaintiff applied for and was granted a vendor credential through Symplr, a credentialling service specializing in access management for healthcare facilities.

17.     To obtain his Symplr vendor credential, Plaintiff was required to submit to a background check, the results of which upon information and belief included his 2018 criminal conviction.

18.     With his Symplr credential, Plaintiff was able to access the majority of healthcare facilities that he was required to service in his role as Customer Loyalty Engineer on behalf of Corporate Defendant.

19.     At no point was Plaintiff ever denied access to a facility serviced by Corporate Defendant because of his criminal conviction or for any other reason.

20.     In or about June 2020, Plaintiff was required to submit to a background check as part of a routine, annual review conducted by Corporate Defendant.

21.     The results of Plaintiff's 2020 annual background check included his 2018 criminal conviction for Attempted Criminal Act in the Second Degree.

22.     At no point following his 2020 annual background check was Plaintiff denied access to a facility serviced by Corporate Defendant as a result of his criminal conviction.

23.     In or about May 2021, Defendant Hamlet advised Plaintiff that he needed to discuss with him an issue related to Plaintiff's employment with Corporate Defendant.

24.     Defendant Hamlet advised Plaintiff that a hospital serviced by Corporate Defendant had contacted him to allege that Plaintiff had a criminal record and no longer wanted him on the premises.

25.     Defendant Hamlet advised that Corporate Defendant would need to determine if its customer's allegation was true.

26.     Defendant Hamlet then asked if Plaintiff had previously been convicted of a felony; Plaintiff responded that he had been convicted of a felony prior to commencing his employment with Corporate Defendant.

27.     Defendant Hamlet advised that Corporate Defendant would suspend Plaintiff from employment with pay pending a second background check and investigation and that pending its results, Plaintiff should not respond to any communications from Corporate Defendant's customers or its employees.

28.     Plaintiff then submitted to a second background check, the results of which were, upon information and belief, identical in all relevant respects to the pre-hire screening administered by Corporate Defendant in June 2019 and to the annual background check conducted in June 2020.

29.     On or about May 24, 2021, Defendant Hamlet terminated Plaintiff's employment with Corporate Defendant due to the fact that Plaintiff was unable to pass a background check without any prior criminal convictions, which he Defendant Hamlet described as an essential requirement for Plaintiff's job.

30.     In terminating Plaintiff's employment, Defendant Hamlet further stated in sum and substance

31.     Defendant Hamlet also advised Plaintiff that prior to concluding to terminate his employment, he and Corporate Defendant considered the factors prescribed by the New York Corrections Law and that such analysis was favorable to Plaintiff's retention but that because of Plaintiff's prior criminal conviction, Corporate Defendant 'simply could not continue to employ

him,' as the absence of a prior criminal record was a 'standard that [Corporate Defendant] has to follow.

32.     In a subsequent email to Plaintiff, Defendant Hamlet described the ability to successfully complete a background check as a requirement imposed by certain of Corporate Defendant's customers to require access to their medical facilities, notwithstanding that subject to previously conducted background checks, Plaintiff had never previously been denied such access and had obtained a vendor credential providing him such access.

33.     On or about August 18, 2021, Corporate Defendant through counsel provided Plaintiff with a statement pursuant to N.Y. Correction Law § 754 stating the purported basis for the termination of Plaintiff's employment.  Therein, Corporate Defendant asserted that Plaintiff was unable to meet the essential duties of his previous role because he was unable to pass a criminal background check as required by its customers and credentialing agencies to be properly credentialed to visit medical facilities, again notwithstanding that subject to previously conducted background checks, Plaintiff had never previously been denied such access and had obtained a vendor credential providing him such access.

34.     In its statement, Corporate Defendant also for the first time and contrary to the statements made by Defendant Hamlet asserted that Plaintiff's termination was supported by the time elapsed since Plaintiff's criminal conviction, the fact that he was an adult at the time of the conviction, that Corporate Defendant considered "this to be a serious offense, particularly for a customer facing role," and that it has a legitimate interest in protecting the safety of its employees and customers.

## JURISDICTIONAL ALLEGATIONS

35.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

36.     At all times relevant herein, Corporate Defendant committed a tortious act or acts, to wit, the unlawful termination of Plaintiff from employment because of his prior criminal conviction and/or because of a finding that Plaintiff lacked "good moral character" based upon the fact of Plaintiff's prior criminal conviction.

37.     At all times relevant herein, Defendant Hamlet aided and abetted Corporate Defendant's unlawful termination of Plaintiff from employment because of his prior criminal conviction and/or because of a finding that Plaintiff lacked "good moral character" based upon the fact of Plaintiff's prior criminal conviction.

38.     At all times relevant herein, Defendants' unlawful termination of Plaintiff from employment because of his prior criminal conviction and/or because of a finding that Plaintiff lacked "good moral character" based upon the fact of Plaintiff's prior criminal conviction would constitute an unlawful discriminatory practice if committed within the State of New York.

39.     At all times relevant herein, Defendants' unlawful termination of Plaintiff from employment because of his prior criminal conviction and/or because of a finding that Plaintiff lacked "good moral character" based upon the fact of Plaintiff's prior criminal conviction had an impact within the State of New York.

40.     Upon information and belief, at all times relevant herein, Corporate Defendant provides technological services to clients in New York, including within the Northern District of New York.

41.     Upon information and belief, at all times relevant herein, Corporate Defendant contracts to supply services within the State of New York, including within the Northern District of New York.

42.     Upon information and belief, at all times relevant herein, Corporate Defendant regularly does and solicits business within the State of New York, including within the Northern District of New York.

43.     Upon information and belief, at all times relevant herein, Corporate Defendant derives substantial revenue from the performance of the above-described services within New York, including the Northern District of New York.

44.     Upon information and belief, at all times relevant herein, Defendants engaged in a persistent course of conduct within the State of New York.

45.     Upon information and belief, at all times relevant herein, Corporate Defendant derives substantial revenue from interstate and international commerce.

46.     At all times relevant herein, Defendants purposefully transacted business within the State of New York, including the Northern District of New York, within the meaning of N.Y. C.P.L.R. § 302(a)(1).

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Discrimination in Violation of  Section 752 of the New York State Corrections Law)

62.     Plaintiff repeats, reiterates, and realleges each and every allegation in the preceding paragraphs as if set forth herein at length.

63.     Corporate Defendant terminated Plaintiff's employment because of his prior criminal conviction and/or its finding that Plaintiff lacked "good moral character" based upon the fact of Plaintiff's prior criminal conviction.

64.     No direct relationship exists between Plaintiff's previous offense and his specific employment held by Plaintiff with Corporate Defendant.

65.     The continuation of Plaintiff's employment with Corporate Defendant would not involve an unreasonable risk to property or to the safety or welfare of any specific individual or to the general public.

66.     Defendant Hamlet aided and abetted Plaintiff's discriminatory termination from employment on the basis of his prior conviction and/or the finding that Plaintiff lacked "good moral character" as a result of such conviction.

67.     As a result of Defendants' violation of the New York Corrections Law, Plaintiff has suffered and continue to suffer damages, including loss of wages and benefits, emotional distress and mental anguish, and attorneys' fees and costs.

WHEREFORE, Plaintiff demands the following relief:

i.     Judgement that Corporate Defendant's actions as described herein violated the New York Corrections Law §§ 750 et seq.;

ii.     Judgement that Defendant Hamlet aided and abetted such violation within the meaning of New York Executive Law §§ 296 et seq.;

iii.     Judgment that Defendants' violative conduct was undertaken with willful or wanton negligence, or recklessness and/or that Defendants acted in conscious disregard of the rights of others or conduct so reckless as to amount to such disregard;

iv.     Judgement awarding Plaintiff compensatory damages in an amount to be determined at trial for the emotional distress suffered as a direct result of Defendants' violations of the New York Corrections Law;

v.        Judgment awarding Plaintiff economic damages in an amount to be determined at trial representing the value of lost wages and employment benefits suffered and expenditures made as a direct result Defendants' violations of the New York Corrections Law;

vi.       Judgement awarding Plaintiff punitive damages under the New York Executive Law for Defendants' violations of the New York Corrections Law;

vii.      Judgment awarding Plaintiff pre- and post-judgment interest, reasonable attorney's fees, and costs; and

viii.     Granting Plaintiff such other and further relief as seems just and proper to the Court.

Dated:  Rhinebeck, New York
        October 14, 2021

_____
Russell G. Wheeler (Bar Roll No. 517881)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

Attorney for Plaintiff James Soper